UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:08-CR-135 |
| | ) | (VARLAN/GUYTON) |
| LESLIE BENSON, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant Leslie Benson is charged in the indictment in this case [Doc. 1] with one count of possessing with the intent to distribute fifty (50) grams or more of a mixture and substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). Defendant was originally represented by Elizabeth Ford in this matter [*See* Doc. 4]. Ms. Ford filed a motion to suppress the evidence seized in this case, and a memorandum in support of that motion, on December 18, 2008 [Doc. 11]. The government filed a response in opposition to the motion to suppress on December 30, 2008 [Doc. 12].

The magistrate judge substituted Andrew Roskind as counsel for defendant on May 11, 2009 [Doc. 19]. Mr. Roskind filed a motion to suppress evidence on November 17, 2009, incorporating by reference the motion to suppress and the memorandum in support filed by Ms. Ford [*See* Doc. 27]. The magistrate judge held hearings on the suppression motion on February 11 and April 14, 2010 [*See* Docs. 31, 38]. Mr. Roskind filed a post-hearing brief

on May 12, 2010 [Doc. 40]. The government filed a response in opposition to this brief on May 20, 2010 [Doc. 41].

On June 18, 2010, the magistrate judge filed a Report and Recommendation (the "R&R") [Doc. 42], in which he recommended that defendant's motion to suppress be denied. The government filed a notice of no objection to the R&R on July 9, 2010 [Doc. 45]. Defendant filed objections to the R&R on July 19, 2010 [Doc. 46]. The government filed a response to defendant's objections on July 23, 2010 [Doc. 49]. This matter is before the Court on defendant's objections. The Court undertakes a de novo review of those portions of the R&R to which defendant objects. Fed. R. Crim. P. 59(b)(3).

The Court has carefully considered the motion to suppress, the memorandums in support of and in opposition to that motion, the R&R, and the objections to the R&R. For the reasons that follow, the Court will overrule defendant's objections, accept the R&R in whole, and deny the motion to suppress.

The Court first sets forth the findings of fact made by the magistrate judge in his R&R.

## I. Findings of Fact[1]

On July 25, 2008, at approximately 11:00 p.m., Officer Richard Wallace and Officer John Martin of the Knoxville Police Department were traveling in a cruiser eastbound on

---

[1] The magistrate judge based his findings of fact on testimony and evidence presented at the suppression hearing held on February 11, 2010. Neither party called witnesses or presented evidence at the April 14, 2010 hearing.

Washington Avenue in East Knoxville, Tennessee. The officers were conducting a routine patrol of the neighborhood. While traveling on the 2700 block of Washington Avenue between North Harrison Street and Mundy Street, Officer Wallace–who was driving the cruiser–looked to his left and observed a stationary Cadillac driven by the defendant in the middle of Nichols Avenue, the next parallel avenue to the northwest. Officer Wallace testified that the Cadillac was "stopped in the middle of the road" directly in front of 2802 Nichols Avenue. Officer Wallace testified that 2802 Nichols Avenue was known to him to be a "drug house," i.e., a residence where "a lot of drug transactions [occur]" and where "drugs [are] smoked." Officer Wallace also testified that the neighborhood surrounding 2802 Nichols Avenue was "a well-known drug area" and "a high crime area."

Officer Wallace was "immediately suspicious" of the stationary Cadillac, and decided to drive around the block and onto Nichols Avenue to investigate why the vehicle was stopped in the middle of the road. Officer Wallace testified that his prior experience led him to believe that the Cadillac was stopped because its driver was participating in a drug transaction. Officer Wallace drove down Washington Avenue and made a left turn onto Mundy Street. He continued down Mundy Street and made a left turn onto Nichols Avenue. Officer Wallace testifed that once he "made the lefthand turn westbound onto Nichols Avenue," he "could see [a] pedestrian, someone on foot, at the [front] driver-side window of the defendant's vehicle." Officer Martin similarly testified that he observed "what appeared to be a male" pedestrian standing near the front driver-side window of the Cadillac.

3

Officer Wallace testified that seeing the pedestrian "kind of confirmed that [the officers'] suspicion was correct that there was a drug transaction taking place."

Officer Wallace testified that as soon as he turned left onto Nichols Avenue and began to drive toward the rear of the stopped Cadillac, "[t]he pedestrian walked off at a very brisk pace back toward [the house at] the 2802 address." Officer Martin testified that the pedestrian "turned his body so as to look at [the officers], and then left the [Cadillac] out of sight–got out of sight as quick as possible."

As the officers approached the stationary Cadillac, defendant drove off down Nichols Avenue in a movement Officer Wallace described as an "unprovoked departure." Officer Wallace testified that the Cadillac was not displaying "brake lights or tail lights," and that there were "no lights to the rear of the vehicle." Officer Wallace also testified that the failure to display brake lights or tail lights is a traffic violation in Tennessee.

Officer Wallace followed the Cadillac as it turned left from Nichols Avenue onto North Harrison Street. Officer Wallace testified that the Cadillac displayed no turn indicator light prior to making the left turn onto Nichols Avenue. As the government points out, failing to use an illuminated turn signal prior to executing a turn is a traffic violation in Tennessee. Officer Wallace decided to initiate a traffic stop to investigate the absence of functioning brake and tail lights on the Cadillac. At 11:02:53 p.m., Officer Wallace activated the blue emergency lights and the forward spotlight on top of his cruiser. Defendant immediately stopped the Cadillac on North Harrison Street just before the intersection with Washington Avenue.

4

Officer Wallace and Officer Martin approached the Cadillac on foot after stopping it. Officer Wallace was the "contact officer": he approached the driver's side of the vehicle and spoke with defendant through the front driver-side window, which was open. Officer Martin was the "cover officer": he approached the rear passenger-side window of the Cadillac and remained there to observe the passenger compartment and the defendant. Officer Wallace informed the defendant that he had been stopped because his brake and tail lights appeared to be out. Officer Wallace asked the defendant for his driver's license and insurance information. Officer Wallace also asked the defendant what he was doing in the area.

This initial conversation lasted approximately one minute and twenty-five seconds. Officer Wallace testified that during this initial conversation the defendant "seemed to be nervous, had sweat on his forehead, shaking hands, [and] a very stuttered speech, a nervous speech." Similarly, Officer Martin testified that defendant "appeared much more nervous than a reasonable person would on a routine traffic stop of a minor violation."

Officer Wallace returned to his cruiser to check the defendant's driver's license against the police computer database. Officer Martin followed Officer Wallace back to the cruiser, and the two conversed about the situation for approximately twenty-five seconds. While Officer Wallace checked the police database, Officer Martin returned to his vantage point just behind the rear passenger-side door of the Cadillac. Officer Martin testified that he looked through the rear passenger window and observed that the defendant had his "pants open," and that his pants were "unbuttoned and unzipped." Officer Martin also testified that he observed the defendant clutching an object in a manner "similar to holding a baseball";

5

he testified further that this object "appeared to be a clear plastic baggie." Officer Martin explained that he saw "clear plastic" between the defendant's fingers as the defendant clutched this object. Officer Martin testified that he watched the defendant shove the object "down the front of his pants" into "his crotch area," zip and button his pants, and return to "a resting position [sitting] in the vehicle." Officer Martin testified that he believed the object to be "a clear plastic baggie containing narcotics." He testified further that he believed the defendant "was concealing illegal narcotics on his person."

After observing defendant for about twenty seconds, Officer Martin returned to the police cruiser and informed Officer Wallace of what he had seen. Officer Wallace testified that Officer Martin told him that he watched the defendant "grab something into his right hand which was displaying clear plastic baggie type material, take it, and shove it down the front of his pants, zip his pants, and button his pants back up." The two officers conversed for about thirty seconds, at which point Officer Martin returned to his "cover" position next to the passenger-side rear tire of the Cadillac. Officer Wallace testified that his check of the police database was incomplete at this time. After about thirty more seconds, Officer Wallace returned to the front driver-side window of the Cadillac and spoke with the defendant. Officer Wallace testified that he had waited to return to the front driver-side window to speak with the defendant until the database check was complete.

Officer Wallace asked the defendant several investigative questions, including what he was doing, where he was coming from, where he was heading, and why he was in the neighborhood. This conversation lasted approximately one minute and forty-one seconds.

Officer Wallace testified that this was "a very nervous conversation." Officer Wallace also testified that the defendant was unable to provide answers to simple questions. Officer Wallace testified, for example, that the defendant "stated that he had dropped his stepson off at an address that he couldn't give me. [He] couldn't give me the name of the stepson. He had to fumble around to think of a name."

At the end of this conversation, Officer Wallace and Officer Martin walked behind the defendant's vehicle to discuss "the best way to get the defendant out of the vehicle" safely. At approximately 11:09 p.m.–roughly six minutes after the officers had initiated the traffic stop–Officer Wallace asked the defendant to exit the vehicle. The defendant did so. Officer Wallace and Officer Martin testified that they smelled the odor of marijuana emanating from within the car as soon as the defendant opened the door and stepped out.

Officer Wallace instructed the defendant to place his hands on the roof of the Cadillac and spread his legs. Officer Wallace testified that he asked for and was granted defendant's consent to a pat down. Officer Wallace then held the waistband of defendant's pants and shook the pants for about twenty-eight seconds.[2] Officer Wallace testified that he checked the defendant's waistband and shook his pants because the waistband and the groin are "high potential area[s] where a weapon could be hidden." Officer Wallace explained that he focused on defendant's waistband because "it's a danger area," and because Officer Martin

---

[2] The Court notes that the magistrate judge found that Officer Wallace shook defendant's pants for approximately twenty seconds. Upon review of the video evidence, this Court believes that this shaking occurred for approximately twenty-eight seconds.

7

had seen the defendant "shove something down the front of his pants." After shaking the defendant's pants, Officer Wallace bent down to pat the defendant's ankles and check the cuffs of his pants. As Officer Wallace rose to stand, he patted the defendant's left leg for approximately two seconds.

Officer Wallace testified that during the pat down he felt "a large bulge" in the defendant's crotch. He stated that the object causing the bulge was in "a very private area," and that it felt like a bag of narcotics. Officer Wallace testified that the object "wasn't attached" to the defendant's person, but was instead "in the middle of [defendant's] two legs in his crotch, in his groin area." Officer Wallace further explained that he "didn't fondle [the object]. Once I recognized that, you know, it was a texture of, you know, drugs or narcotics, I immediately stopped [the pat down] and handcuffed [the defendant]."

Officer Wallace handcuffed the defendant and searched his pockets. Officer Wallace discovered $1,366.00 in cash on defendant's person. Officer Wallace then prepared to recover the unknown object from inside the crotch of defendant's pants by putting on a pair of rubber gloves. At this point, defendant offered to remove the object from his pants and surrender it, telling Officer Wallace, "I'll get 'em for you." Officer Wallace uncuffed the defendant. Defendant opened the fly of his pants, reached inside with one hand, and removed two plastic baggies. One baggie contained 63.3 grams of cocaine base, and the other baggie contained 3.3 grams of marijuana.

**II. Analysis**

Defendant argues that the officers in this case lacked probable cause to search him, and that the evidence obtained as a result of this search should therefore be suppressed [Doc. 46]. In support of this argument, defendant contends that the video evidence in this case demonstrates that Officer Martin was "not in a position to support his claims" that defendant "grabbed an item, unzipped his pants, shoved an item in his pants, [and] then zipped [his pants] back up" [*Id.*]. He argues further that the magistrate judge "fail[ed] to explain, if [Officer Martin's] allegation is taken as true, how such an act gives an officer probable cause" [*Id.*].

The Court respectfully disagrees with defendant's contentions. With respect to defendant's factual argument, this Court has independently reviewed the video evidence in this case, and finds that Officer Martin was in a position to observe defendant shoving items Officer Martin believed to be drugs into defendant's pants. And with respect to defendant's legal argument, the magistrate judge explicitly opined that:

> The Court of Appeals for the Sixth Circuit has indicated that a police officer's observation during a traffic stop of a vehicle occupant making "movements like he [is] stuffing something in his pants" can provide probable cause for a full search of the occupant's person. *Hemphill v. Haglund*, 45 F. App'x 519, 520 (6th Cir. 2002) ("the officer clearly had probable cause to conduct the search once he observed Hemphill appearing to stuff something into his pants").

[*Id.*]. The Court therefore rejects defendant's probable cause arguments.

Defendant also argues in passing that the officers did not have reasonable suspicion to conduct a pat down search of defendant in this case. Defendant contends, for example,

9

that "the only reasonable suspicion [Officer Wallace] had to detain [defendant] . . . [was Officer Wallace's] observations, or those of Officer Martin, during the stop"; that "the facts fail to establish that . . . the officers had reasonable suspicion to believe that [defendant] was involved in criminal activity"; and that "any and all reasonable suspicion of criminal activity occurred during the stop" of defendant and "was based on [defendant's] appearing nervous, sweating, inability to recite [an] address, and finally, Officer Martin's allegation of seeing [defendant] shove an item in his pants" [Doc. 46].

However, as the magistrate judge correctly found, Officer Martin's observation of defendant shoving an item Officer Martin believed to be drugs into defendant's pants provided the officers with probable cause to search defendant's person. "[W]hether the pat down was in fact a proper '*Terry* frisk' or something more intrusive," as the magistrate judge correctly explained, "is [thus] irrelevant" [Doc. 42]. *See United States v. Montgomery*, 377 F.3d 582, 586 (6th Cir. 2004) (quoting *Rawlings v. Kentucky*, 448 U.S. 98, 110-11 n.6 (1980)) ("[T]he search-incident-to-a-lawful-arrest rule . . . permits an officer to conduct a full search of an arrestee's person *before* he is placed under lawful custodial arrest as long as 'the formal arrest follows quickly on the heels of the challenged search of . . . [his person]' . . . .").[3]

---

[3] Defendant also complains that the magistrate judge "dismissed Officer Wallace's [*Terry* frisk] version of the search" and "substituted a [search-incident-to-a-lawful-arrest] legal theory in its place" [Doc. 46]. The Court finds no error in the magistrate judge's application of an appropriate legal theory to facts which properly give rise to it.

The Court notes finally that defendant has raised several objections to the findings of fact made by the magistrate judge. Defendant contends, for example, that he "did not make a headlong flight or an abrupt left turn" off of Nichols Avenue as he was being followed by the police cruiser; that he never stopped on Nichols Avenue; that Officer Wallace's initial view of defendant's vehicle was obstructed; and that Officer Wallace failed to provide an adequate explanation of how the bag that was discovered in defendant's pants was not dislodged when Officer Wallace shook defendant's pants [*See* Doc. 46]. None of these factual disputes, however, displace the magistrate judge's well-supported finding that the officers had probable cause to search the defendant in this case.[4] The Court thus overrules these objections as well.

## III. Conclusion

For the reasons above, the Court **OVERRULES** defendant's Objections to Report and Recommendation [Doc. 46]. The Court **ACCEPTS IN WHOLE** the Report and Recommendation [Doc. 42]. Defendant's Motion to Suppress [Doc. 27] is **DENIED**.

IT IS SO ORDERED *NUNC PRO TUNC* July 16, 2010 .

s/ Thomas A. Varlan<br>
UNITED STATES DISTRICT JUDGE

---

[4] The Court notes that the magistrate judge based his probable cause finding not only on Officer Martin's testimony that he observed defendant shoving an object Officer Martin believed to be drugs into defendant's pants, but also on the officers' testimony that defendant's car was "stopped late at night in front of a known 'drug house[]' located in a neighborhood that was both 'a well-known drug area' and 'a high crime area,'" and on the officers' testimony that defendant exhibited "nervous behavior" during questioning by Officer Wallace [*See* Doc. 42].